UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES CAVALIER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-07-678 |
| | § | |
| CLEARLAKE REHABILITATION HOSPITAL INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Pending before the court is defendant Clearlake Rehabilitation Hospital Inc.'s ("Clearlake") motion for summary judgment. (Dkt. 34.)  Having reviewed the motion, all responsive pleadings, the record evidence, and the applicable law, the court finds that summary judgment should be GRANTED.  Also pending are plaintiff James Cavalier's motion to extend time to file response (Dkt. 40) and motion for leave to file excess pages (Dkt. 43).  Cavalier's motions are GRANTED.  Therefore, Clearlake's motion to strike Cavalier's response (Dkt. 39) is DENIED as moot.

BACKGROUND

Clearlake hired Cavalier as director of nursing on August 16, 2004.  Cavalier was responsible for supervising the nursing department and overseeing lab contracts, employee health and wellness, and employee education.  Cavalier reported directly to Clearlake's chief executive officer, Claudia McCready.  On January 3, 2005, Belinda Simpson began her employment with Clearlake as the hospital's director of quality.  Simpson was responsible for documentation standards maintenance, patient care risk management, medical records, and other various duties.  Like Cavalier, Simpson reported directly to McCready.  Cavalier and Simpson interacted on a daily basis.

Cavalier alleges that shortly after Simpson's arrival, her conduct towards him became objectionable. "[T]he comment [sic] and actions from Simpson were persistent, rude and racist comments that became part of the day-to-day interaction with the offending Belinda Simpson." (Dkt. 38.) On December 19, 2005, Cavalier submitted to Clearlake's human resource director Frederica Malone a formal complaint entitled "Violation of the HR 508 Prevention of Harassment Policy." (Dkt. 34, Ex. 6.) On January 26, 2006, Cavalier tendered a letter of resignation effective February 24, 2006. (Dkt. 34, Ex. 8.) The same day, Cavalier was escorted off Clearlake's premises.

On March 17, 2006, Cavalier filed a charge of discrimination with the Equal Employment Opportunity Commission. (Dkt. 34, Ex. 1.) On January 10, 2007, Cavalier filed suit in the 157th Judicial District Court of Harris County, Texas. (Dkt. 1.) Clearlake removed the case to this court on February 26, 2007. Subsequently, Clearlake moved for summary judgment.

## STANDARD OF REVIEW

Summary judgment should be granted if the record, taken as a whole, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *N.Y. Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)

(en banc) (quoting *Celotex*, 477 U.S. at 323-25). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the moving party meets this burden, however, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996). The court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir.1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S. Ct. 2505 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

## ANALYSIS

## Hostile Work Environment[1]

Cavalier asserts a claim for discriminatory conduct in violation of Title VII based on the hostile work environment theory.  (Dkt. 1).  To establish a *prima facie* case of hostile work environment, an employee must show that (1) he belongs to a protected group, (2) he was subjected to unwelcome harassment, (3) the harassment was based on the employee's membership in the protected group, (4) the harassment affected a term, condition, or privilege of his employment, and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 353 (5th Cir. 2001).  The employee need only establish the first four *prima facie* elements, however, where the harassment was allegedly committed by a supervisor with immediate (or successively higher) authority over the employeeSvictim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S. Ct. 2275 (1998). Hence, an employer is vicariously liable for the supervisor's conduct if the employee makes the four-part *prima facie* showing of harassment by a supervisor. *Id.*  Note that in cases where the supervisor's harassment did not culminate with any "tangible employment action" against the employee, the employer is entitled to an affirmative defense.[2] *Id.*

---

[1]     Without conceding its validity, Clearlake notes that Cavalier's "[c]onditions of [e]mployment" claim is a newly asserted basis for recovery and therefore should be stricken.  Cavalier cites to the Supreme Court's ruling in *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257 (1998), in support of this claim.  Cavalier also cites to *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006).  The *Ellerth* Court addressed the appropriate standard of review in hostile work environment claims.  The *White* Court addressed the scope of Title VII's anti-retaliation provision.  Because neither case sets forth a "conditions of employment" claim, the court will consider the claim as part of Cavalier's hostile work environment claim.

[2]     Cavalier urges that because Simpson was " 'a' supervisor," Clearlake should be held vicariously liable for Simpson's conduct. (Dkt. 38.)  Because the court finds that Cavalier fails to establish a genuine issue of material fact as to the fourth element of his hostile work environment claim, it is unnecessary to determine the nature of Clearlake's potential liability.

4

Cavalier's allegations consist of the following incidents:

• January 10, 2005: Plaintiff was called a duffas [sic] and a dunce in a Senior Leadership Meeting.

• January 25, 2005: . . . [I]n a meeting to set up the rules and guidelines for the Staffing Effectiveness Meeting. . . , Mrs. Simpson was rude and her tone was very inappropriate and offensive.

• January 26, 2005: Plaintiff approached Mrs. Simpson in her office about the way she communicated with him in that meeting. Plaintiff also let her know that her rudeness and display of lack of respect is especially true in front of subordinates. Plaintiff requested that she change her tone and the manner in which she speaks to him. Mrs. Simpson's response to Plaintiff, "Don't disagree with me, and I won't have to speak to you that way."

• February 1, 2005: Mrs. Simpson, Mrs. Malone and Plaintiff were discussing a change in the hospital orientation schedule. In this meeting, Mrs. Simpson called Plaintiff a liar several times; her tone and posturing were rude and belligerent.

• February 2, 2005: Mrs. Simpson, Mary Goodman and Plaintiff were discussing an issue with the medical record. In this meeting, Mrs. Simpson told Plaintiff that she was going to "beat the tar off of Plaintiff."[3]

• March 1, 2005: Mrs. McCready, Mrs. Malone, Mrs. Simpson and Plaintiff had a meeting about physician complaints. In this meeting, again, Mrs. Simpson's communication was rude and inappropriate. She would cut Plaintiff off in the middle of statements and say forcefully, "Listen, listen" and then make a statement.

• March 7, 2005: Mrs. McCready, Mrs. Malone, Mrs. Simpson and Plaintiff had a meeting about incident reports. In this meeting, Plaintiff was accused of destroying incident reports. In an effort to defame Plaintiff and get him fired, Mrs. Simpson had begun secret communications with employees under Plaintiff's indirect supervision. In this meeting, Mrs. Simpson was again rude, belligerent and hostile—so much so, that Mrs. McCready had to redirect her to the meeting at hand, and after one of her rude remarks, Mrs. McCready said, "That's not nice."

---

[3] Simpson denies making that statement. (Dkt. 34, Ex. D.) Goodman testified that she did not hear Simpson make that statement. (Dkt. 34, Ex. F.)

- June 6, 2005: an e-mail was sent to corporate leadership in an attempt to defame Plaintiff that portrayed inaccurate information. This email by-passed multiple levels of the chain of command.

- September 21, 2005: while evacuating the facility, Mrs. Simpson halted a project that Plaintiff issued to the Dalia Nandin, human resources administrative assistant. The human resources administrative assistant called Mrs. Simpson to discuss the incident on speaker phone. Mrs. Simpson was again rude and belligerent in her conversation with the administrative assistant and Plaintiff.

- November 30, 2005: an e-mail was sent to most senior leaders with attachments of action plans and follow up with inaccurate information in an attempt to defame Plaintiff.

- December 14, 2005: Mrs. McCready, Mrs. Simpson, Mrs. Malone, Stephanie Smith, Pati Cherry, Kim Petersen and Plaintiff met regarding incident reports. In this meeting, when [Plaintiff] began to speak, Mrs. McCready and Mrs. Simpson began to have a conversation as if [Plaintiff] were not present. Mrs. Simpson made statements such as [Plaintiff] "never" follow[s] up on incident reports. That "nothing is ever done." In an attempt to defame Plaintiff, when he challenged these counterproductive statements, Mrs. McCready said that "Mrs. Simpson did not say that."

- On January 9, 2006: in a conversation with Jeff Prince, the corporate human resources person [who] was investigating the grievance, [Prince] stated that Mrs. Simpson admitted to . . . call[ing] [Plaintiff] "Master."[4]

(Dkt. 1, Ex. 2B.)  In addition to the listed incidents, Cavalier alleges that Simpson, "[o]n multiple occasions," referred to him as "boy" and "bragged that she was going to get [Cavalier] fired." (*Id.*) Later, Cavalier testified that Simpson called him "boy" during the March 1, 2005, meeting. (Dkt. 38, Ex. 7.)[5]  Of the twelve specifically alleged incidents in Cavalier's complaint, only the February 2,

---

[4]      For the purpose of this motion, the court will assume the out-of-court statement admissible.

[5]      In support of his claims, Cavalier asserts that other Clearlake employees complained about Simpson's conduct. (Dkt. 38.) Because the proffered complaints alleged that Simpson was unprofessional and discourteous, not racist, they do not lend additional support to Cavalier's claims. (Dkt. 38, Exs. 20-21.)

2005, incident implicates discrimination based on race.[6]  The court also finds that only two other alleged incidents implicating potential for racial animus can be gleamed from the record: (1) Simpson using the term "boy" in Cavalier's presence on March 1, 2005, and (2) Simpson using the term "boy" in Cavalier's presence on March 7, 2005 (Dkt. 34).[7]

Cavalier has established the first three prongs of his *prima facie* hostile work environment claim.  On February 2, March 1, and March 7, 2005, Cavalier, an African–American, was subjected to unwelcome harassment based on race.  The court must next determine whether the harassing conduct affected a term, condition, or privilege of Cavalier's employment at Clearlake.

In determining whether alleged harassment affects a term, condition, or privilege of employment, a court will consider the totality of the circumstances, considering factors such as (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether the discriminatory conduct is physically threatening or humiliating, or merely an offensive utterance, and (4) whether the discriminatory conduct unreasonably interferes with an employee's work performance. *Hockman v. Westward Commc'ns, L.L.C.*, 407 F.3d 317, 325-26 (5th Cir. 2004) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993)); *see also Ramsey*, 286 F.3d at 268 (citing *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)).  The plaintiff must subjectively perceive the harassment as

---

[6]     Although Cavalier urges that he perceived the other eleven incidents to be harassment motivated by race, his subjective perception is not objectively reasonable. *Frank*, 347 F.3d at 138 (plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable).  These incidents do not implicate racial animus through words or conduct.  Given that only three other incidents implicate animus based on race, *see infra* text accompanying note 7, the court is without sufficient proof to reasonably infer such animus into the eleven incidents.  For the same reason, the allegation that Simpson bragged about her intention to get Cavalier fired does not implicate discrimination based on race.

[7]     Cavalier's general allegation that Simpson often referred to him as "boy" is insufficient summary judgment proof. *See Wallace*, 80 F.3d at 1049-50; *Ramsey*, 286 F.3d at 269-70.  Furthermore, Cavalier fails to explain the context in which the March 1 and March 7 incidents occurred.  Cavalier testified that "[Simpson] used to pass by me in the hall and say, boy go over there, you know, I need you to do this.  Or boy, stop that." (Dkt. 38, Ex. 7.)  Without more, these allegations do not meet summary judgment proof standards.  Nevertheless, because its conclusion remains unaffected, the court will consider the March 1 and March 7 incidents in its analysis.

sufficiently severe or pervasive, and this subjective perception must be objectively reasonable. *Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (citing *Harris*, 510 U.S. at 21). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998) (internal citations omitted). Occasional comments, discourtesy, rudeness, or isolated incidents, unless extremely serious, are insufficient to establish severe or pervasive harassment. *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999). "[T]he mere utterance of an epithet which engenders offensive feelings in an employee is insufficient, without more, to support Title VII liability." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996) (quoting *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 595 (5th Cir. 1995) (internal quotation marks omitted)). Rather, the harassment "must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (quoting *Ramsey*, 286 F.3d at 268). Moreover, hostile environment claims based on race "must involve racially discriminatory intimidation, ridicule and insults." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996) (quoting *DeAngelis*, 51 F.3d at 595).

Cavalier's allegations cannot meet this lofty standard. The alleged harassment was not so severe or pervasive as to result in a hostile and abusive working environment, altering Cavalier's conditions of employment. In *Wallace v. Tex. Tech Univ.*, the Fifth Circuit affirmed summary judgment on a hostile work environment claim where the plaintiff, other than alleging that his supervisor "'routinely [made] racist remarks," failed to provide specific evidence of racist remarks by anyone affiliated with his employer. *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1049-50 (5th Cir.

1996).  In *Ramsey v. Henderson*, the Fifth Circuit came to the same conclusion. *Ramsey*, 286 F.3d 264.  The court found the record "rife with vague assertions of racial animus." *Id.* at 269.  However, the circuit court agreed that although the record clearly indicated that plaintiff's supervisor did not approve of plaintiff's interracial relationship, plaintiff's allegations "[fell] far short of setting forth the requisite elements of a *prima facie* claim of a hostile working environment." *Id.* at 270.

In *DeAngelis v. El Paso Municipal Police Officers Ass'n*, the Fifth Circuit reversed a jury verdict favoring the plaintiff's hostile work environment claim. *DeAngelis*, 51 F.3d 591.  The court examined several derogatory statements printed in a company leaflet over a span of two and a half years and found them the equivalent of the "'mere utterance of an . . . epithet which engenders offensive feelings in an employee.'" *Id.* at 595 (quoting *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986)).  The *DeAngelis* court noted that the weak evidence of any impact of the statements on the plaintiff supported its conclusion. *Id.* at 596.  Finally, the court compared plaintiff's allegations against those that courts had found sufficient for Title VII hostile environment claims.

> First, DeAngelis was subjected to no overtly discriminatory professional treatment. She was not a victim of ridicule before her promotion to become the first woman sergeant in the police department. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1486 (3d Cir. 1990) (derogatory and sexual remarks and conduct against female police officer).  Second, no physical or sexual advances were made on DeAngelis, as has been characteristic of many hostile environment claims. *See, e.g.*, *Waltman v. Int'l Paper Co.*, 875 F.2d 468 (5th Cir. 1989) (female employee was repeatedly sexually groped and propositioned); *Carr v. Allison Gas Turbine Div. Gen. Motors*, 32 F.3d 1007 (7th Cir. 1994) (co-workers of female tinsmith cut her overalls and accompanied exposure of themselves with lewd sexual innuendos); *Arnold v. City of Seminole*, 614 F. Supp. 853 (E.D. Okla. 1985) (female police officer subjected to lewd and vulgar sexual comments and innuendos, and discriminatory employment action).  Third, DeAngelis was not preyed upon by a superior whose actions could be interpreted as an abuse of power against a subordinate employee. *Jones v. Flagship Int'l*, 793 F.2d 714 (5th Cir.1986), *cert. denied*, 479 U.S. 1065 (1987).  She was herself in a command position.  Fourth, apart from the claimed impact of the articles, there is no evidence of an atmosphere of sexual inequality or sexually demeaning treatment within the El Paso Police Department, her employer.

On the contrary, representatives of the police department testified that they were embarrassed about and exhorted against the R.U. Withmi columns.  Chief Scagno twice distributed memoranda throughout the police department condemning the R.U. Withmi columns.

*Id.*

The harassment alleged by Cavalier as creating a hostile work environment is the equivalent of the "mere utterance of an . . . epithet which engenders offensive feelings in an employee." *Id.* at 595; *see also Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347-48 (5th Cir. 2007) (alleged insensitive comments by non-minority supervisor to African–American employee, regarding volunteer work supervisor did with inner-city youth, referring to them as "ghetto children," and supervisor's alleged expressions of surprise or disdain about employee's high-end car and shopping habits, were insufficient to support employee's Title VII hostile work environment claim).  The three incidents occurred over the span of approximately one month.[8]  Approximately one month passed between the first and the next two incidents.  From the time of the last incident, over ten months elapsed before Cavalier resigned due to the alleged hostile work environment.[9]  The alleged racial slurs fail to approach the requisite severity or pervasiveness necessary to establish a Title VII hostile work environment claim. *See Turner*, 476 F.3d at 348 (citing *Walker*, 214 F.3d at 619-22 (holding that plaintiff survives summary judgment where evidence demonstrated years of inflammatory racial epithets, including "nigger" and "little black monkey"); *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1266 (7th Cir. 1991) (finding summary judgment for defendant inappropriate where plaintiff was subjected to "nigger jokes" for a ten-year period and whose workstation was adorned with "a

---

[8]     Cavalier argues that the January 10, 2005, incident implicated racial animus.  Though offensive, insulting, and demeaning, the court is not convinced that the words "doofus" or "dunce" are racial slurs.

[9]     Because summary judgment is found appropriate, the court will presume Cavalier's discrimination charge timely.

human-sized dummy with a black head"); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182 (4th Cir. 2001) (reversing summary judgment where plaintiff suffered "incessant racial slurs" including "nigger" and "dumb monkey")).

The Fifth Circuit's poignant explanation of the import of legitimate hostile environment claims (in the sexual harassment context) convinces this court that finding in favor of Cavalier's assertion would trivialize the standard into one of preference.

> A claim for a sexually hostile working environment is not a trivial matter. Its purpose is to level the playing field . . . by preventing others from impairing [the] ability to compete on an equal basis . . . . One must always bear this ultimate goal in mind. A hostile environment claim embodies a series of criteria that express extremely insensitive conduct . . . , conduct so egregious as to alter the conditions of employment and destroy . . . equal opportunity in the workplace. Any lesser standard of liability, couched in terms of conduct that sporadically wounds or offends but does not hinder a[n] . . . employee's performance, would not serve the goal of equality. In fact, a less onerous standard of liability would attempt to insulate women from everyday insults as if they remained models of Victorian reticence. A lesser standard of liability would mandate not equality but preference for women: it would create incentives for employers to bend over backwards in women's favor for fear of lawsuits. Now that most American women are working outside the home, in a broad range of occupations and with ever-increasing responsibility, it seems perverse to claim that they need the protection of a preferential standard. The careful, heightened phrasing of a hostile environment claim, enforceable where working conditions have palpably deteriorated because of sexually hostile conduct, aims to enforce equality, not preference.

*Id.* at 593. This lofty standard is equally applicable in the context of hostile work environment claims that are based on race discrimination. *See, e.g.*, *Smith v. Harvey*, No. 7-30395, 2008 WL 344747 (5th Cir. Feb. 7, 2008) (per curiam); *Pickens v. Shell Tech. Ventures, Inc.*, 118 F. App'x. 842, 850 (5th Cir. 2004) (per curium); *Mosley v. Marion County*, 111 F. App'x. 726 (5th Cir. 2004) (per curiam) (holding that evidence of three incidents involving racial slurs was insufficient to support a hostile work environment claim); *cf. Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007) ("Title VII, however, is not a 'general civility code,' and 'simple

11

teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" (quoting *Faragher v. City of Boca Raton*, 524 U.S. at 788 (citations omitted) (internal quotation marks omitted)).   At all times during his employment at Clearlake, Cavalier was a director reporting directly to the chief executive officer.   Notably, during Cavalier's employment, three of the seven directors reporting directly to McCready were African–American. (Dkt. 34.)   Furthermore, McCready herself is Hispanic. (*Id.*)   The court does not find that racial animus at Clearlake interfered with Cavalier's terms, conditions, or privileges of employment.

The court, therefore, finds no genuine issue of material fact as to Cavalier's hostile work environment claim and grants summary judgment in favor of Clearlake.

### Constructive Discharge

Cavalier also asserts a constructive discharge claim.   Dkt. 1.   To prove constructive discharge, the evidence must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment claim. *Derouen v. Carquest Auto Parts*, 275 F.3d 42, 42 (5th Cir. 2001) (citing *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)).   Because Cavalier's constructive discharge claim relies on the same evidence as his hostile work environment claim,[10] he cannot survive summary judgment on this claim, either. *See id.*

---

[10]      Additionally, Cavalier details his attempts to resolve the conflict with Simpson. (Dkt. 38.) Specifically, Cavalier alleges that on numerous occasions he complained to Malone.   Cavalier also alleges that he attempted to meet with Clearlake's chief executive officer.   Although the court must resolve factual controversies in favor of Cavalier, *Wallace*, 80 F.3d at 1048, his summary judgment burden of proof may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.   *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.   Aside from Cavalier's self serving testimony, there is not a scintilla of other evidence to support the foregoing assertions. For example, Malone concedes meeting with Cavalier to discuss the conflict with Simpson. However, Malone testified that "[Cavalier] never complained to [him] about [Simpson's] conversations being racist." (Dkt. 38, Ex. 11.) Therefore, even if such proof was relevant to a constructive discharge claim, the court finds the proffered evidence insufficient to warrant a factual inference in favor of Cavalier.

## CONCLUSION

For the foregoing reasons, the court finds no genuine issue of material fact as to any of Cavalier's claims.  Therefore, summary judgment is GRANTED in favor of Clearlake.  Cavalier's motion to extend time to file response (Dkt. 40) and motion for leave to file excess pages (Dkt. 43) are GRANTED.[11]  Clearlake's motion to strike Cavalier's response (Dkt. 39) is DENIED as moot.

Signed at Houston, Texas on May 12, 2008.

Gray H. Miller
United States District Judge

---

[11]      Cavalier's response was untimely filed and exceeded the page limit for legal memoranda. The motions to extend the time to file a response and to exceed the page limits were only filed after Clearlake moved to strike Cavalier's response.  Notably, a substantial part of the excess consists of legally and factually irrelevant matter.  Poetry, book excerpts, and photos of lynchings and burning men were apparently submitted in an attempt to make up for the significant lack of evidence to support Cavalier's claims.  The court finds the plaintiff's response unprofessional and offensive.

13